T.C. Summary Opinion 2017-17


UNITED STATES TAX COURT


CHRISTOPHER B. ANDERSON AND SANDRA R. ANDERSON, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 31583-15S.                          Filed March 16, 2017.


Christopher B. Anderson and Sandra R. Anderson, pro sese.

Nathan C. Johnston and Linette B. Angelastro, for respondent.


SUMMARY OPINION


GUY, Special Trial Judge:  This case was heard pursuant to the provisions

of section 7463 in effect when the petition was filed.[1]  Pursuant to section 7463(b),

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code, as amended and in effect for the taxable year 2012, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent issued a notice of deficiency to petitioners determining a Federal income tax deficiency of $6,095 for the taxable year 2012 (year in issue). Petitioners, husband and wife, filed a timely petition for redetermination with the Court. At the time the petition was filed, petitioners resided in California.

There is no dispute that during the year in issue petitioners paid "moving expenses" of $17,415 as that term is defined in section 217(b). The parties also agree that Mr. Anderson's new principal place of work in California was at least 50 miles farther from his former residence in Pennsylvania than his former principal place of work in Pennsylvania was from his former residence. See sec. 217(c)(1)(A).

The sole issue for decision is whether Mr. Anderson was a full-time employee at his new place of employment for at least 39 weeks during the one-year period beginning with his arrival in the general location of his new principal place of work. See sec. 217(c)(2)(A).

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference.

Mr. Anderson earned a bachelor's degree from the University of Southern California in 1979, and he was certified as a public accountant in 1981.

In the years before 2012 petitioners resided in Pennsylvania. In December 2011 Mr. Anderson was laid off by his employer, and petitioners quickly decided to move to California where Mr. Anderson had a network of professional contacts that he could call upon to assist him in his search for a new position. The parties agree that Mr. Anderson arrived in the general location of his new principal place of work in California on March 7, 2012.

On June 7, 2012, Mr. Anderson signed an employment agreement with David M. Lewis Co., LLC (DLC). Paragraph 1 of the employment agreement states in relevant part: "This Agreement shall commence on July 16, 2012, and shall continue for one full calendar year. * * * During the term of this Agreement, Employee shall provide their full time services to The Company." Paragraph 6 of the employment agreement, a nonsolicitation clause, states that, during the term of the agreement and for one year after its termination, expiration, or cancellation, Mr. Anderson would not provide or offer to provide services to DLC's clients (other than through DLC) if DLC had assigned or introduced Mr. Anderson to that client within the preceding 12 months. Paragraph 10 of the employment agreement states in relevant part that the agreement "contains the entire agreement

between the parties as to its subject matter and it supersedes all prior agreements" and that modifications (other than modifications to employee benefits or changes required by applicable laws or regulations) must be set forth in a document signed by the parties.

A few days after Mr. Anderson executed the employment agreement, DLC personnel contacted him and requested his assistance in preparing marketing materials for dissemination to the firm's clients highlighting his background and experience.[2]  Mr. Anderson responded to these requests over the next several days. He also participated in employment-related training programs.

Because Mr. Anderson was not eligible for paid vacation time during his first year of employment with DLC, the Andersons took a 10-day family vacation in June 2012.

Mr. Anderson began providing consulting services to DLC's clients on Monday, July 16, 2012, and he received his first paycheck on July 27, 2012,

---

[2]Respondent reserved an objection in the stipulation of facts to the admission of an exhibit which includes email exchanges between DLC personnel and Mr. Anderson from June 11 to 22, 2012.  Relying on the parol evidence rule, respondent asserts that the best evidence of Mr. Anderson's employment relationship with DLC is the employment agreement he executed on June 7, 2012. As discussed below, we have considered the entire record (including the disputed exhibit) and conclude that Mr. Anderson was not a full-time employee for the requisite time under sec. 217.  Under the circumstances, the admission of parol evidence is of no consequence, and we consider respondent's objection moot.

compensating him for 56 hours of work performed during the two-week period ending July 22, 2012. The parties agree that Mr. Anderson was not a full-time employee in the general location of his new principal place of work in California from March 7 through June 6, 2012, but that he was a full-time employee in that general location from July 16, 2012, through March 7, 2013.

## Discussion

As a general rule, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Tax deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Under certain circumstances, the burden of proof with respect to relevant factual issues may shift to the Commissioner under section 7491(a). Although petitioners have not asserted that section 7491(a) applies, we find that the facts that are relevant to the disposition of this case are not in dispute. Consequently, the placement of the burden of proof is immaterial.

Section 217(a) allows as a deduction "moving expenses paid or incurred during the taxable year in connection with the commencement of work by the taxpayer as an employee or as a self-employed individual at a new principal place of work." Section 217(b) generally defines the term "moving expenses" as the reasonable expenses of moving household goods and personal effects from the former residence to the new residence and related travel.

Section 217(c) imposes conditions that taxpayers must satisfy to be eligible to claim a deduction for moving expenses. The condition at issue in this case requires that, during the 12-month period immediately following a taxpayer's arrival in the general location of his new principal place of work, the taxpayer be employed full time in that general location for at least 39 weeks. Sec. 217(c)(2)(A).[3] Given that Mr. Anderson arrived in California on March 7, 2012, he had to have worked as a full-time employee at least 39 weeks over the 12-month period that immediately followed.

Petitioners maintain that Mr. Anderson satisfied the 39-week test because he became a full-time employee when he signed the DLC employment contract on

---

[3]Sec. 217(d) provides for a waiver of the full-time employee requirement of sec. 217(c)(2) if the taxpayer is unable to satisfy it because of death, disability, or involuntary separation from the employer--circumstances that are not implicated in this case.

June 7, 2012, and that he remained in that status through March 7, 2013.[4]  In support of this proposition, petitioners assert that after June 7, 2012, Mr. Anderson was no longer able to seek alternative employment opportunities, and DLC personnel treated him as a full-time employee when they requested that he assist in the preparation of DLC marketing materials and engage in training activities.

Respondent contends that Mr. Anderson did not meet the 39-week test because he did not become a DLC employee (full time or otherwise) until July 16, 2012--the employment commencement date specified in his employment agreement.  We agree with respondent.

Mr. Anderson's employment agreement with DLC states in pertinent part: "This Agreement shall commence on July 16, 2012, and shall continue for one full calendar year", and it "contains the entire agreement between the parties as to its subject matter".  Mr. Anderson acknowledges that he first provided consulting services to DLC's clients on July 16, 2012, and that he was first added to DLC's payroll and became eligible for employee benefits on that date.  In the light of the employment agreement and Mr. Anderson's payroll records, we conclude that he first became a full-time employee of DLC on July 16, 2012.

---

[4]The period June 7, 2012, through March 7, 2013, comprises 39 weeks.

There is no support in the record for petitioners' assertion that Mr. Anderson should be considered a full-time employee of DLC as of June 7, 2012, on the ground that he was barred from seeking employment with another employer after that date. The employment agreement contains no provision barring Mr. Anderson from seeking other employment opportunities before July 16, 2012. In this regard, the nonsolicitation clause in the employment agreement, which barred Mr. Anderson from attempting to perform services for DLC's clients (other than through DLC), was not effective until July 16, 2012.

We likewise are not persuaded by petitioners' argument that Mr. Anderson should be considered a full-time employee because DLC personnel requested his assistance in preparing marketing materials and he engaged in training activities. Employment generally is considered to commence when the employer is under an obligation to pay the employee. See, e.g., Walling v. Jacksonville Terminal Co., 148 F.2d 768, 769 (5th Cir. 1945).[5] Petitioners have not suggested (and the emails that Mr. Anderson exchanged with DLC personnel do not show) that DLC was obliged to pay him for assisting in the preparation of the marketing materials or that he expected to be paid for those services or for engaging in training activities.

---

[5]Black's Law Dictionary defines the term "employment" as "[w]ork for which one has been hired and is being paid by an employer." Black's Law Dictionary 641 (10th ed. 2014).

As we see it, the DLC-related activities that Mr. Anderson engaged in before July 16, 2012, amounted to routine preliminary administrative tasks that are required before one enters into service at a new place of employment.

Considering all the facts and circumstances, we conclude that Mr. Anderson began full-time employment with DLC on July 16, 2012. We therefore sustain respondent's determination disallowing the deduction in dispute.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.